1  DOUGLAS FUCHS, SBN 196371
   dfuchs@gibsondunn.com
2  ILISSA SAMPLIN, SBN 314018
   isamplin@gibsondunn.com
3  DANIEL NOWICKI, SBN 304716
   dnowicki@gibsondunn.com
4  GIBSON, DUNN & CRUTCHER LLP
   333 South Grand Avenue
5  Los Angeles, CA  90071-3197
   Telephone:  213.229.7000
6  Facsimile:   213.229.7520

7  Attorneys for KORN FERRY
   and MARAT FOOKSON

8

9                   UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11                        WESTERN DIVISION

12

| | |
|---|---|
| SSI(U.S.), INC., a Delaware corporation, d/b/a SPENCER STUART, SPENCER STUART INTERNATIONAL B.V., AND SPENCER STUART INTERNATIONAL IRELAND, LTD., LIMITED LIABILITY COMPANY SPENCER STUART INTERNATIONAL, <br><br> Plaintiffs, <br><br> v. <br><br> KORN FERRY, a Delaware corporation, and MARAT FOOKSON, <br><br> Defendants. | CASE NO. 2:21-cv-02073-JVS-PD <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF LAW IN SUPPORT THEREOF** <br><br> *[[PROPOSED] ORDER AND DECLARATIONS IN SUPPORT FILED CONCURRENTLY HEREWITH]* <br><br> **Hearing:** <br> Date:      July 19, 2021 <br> Time:      1:30 pm <br> Place:     Courtroom 10C <br> Judge:    Hon. James V. Selna |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on Monday, July 19, 2021 at 1:30 pm, in Courtroom 10C of this Court at Ronald Reagan Federal Building and U.S. Courthouse, 411 West 4th Street, Santa Ana, CA 92701-4516, Defendants Korn Ferry and Marat Fookson ("Defendants") will and hereby do move to dismiss this action for failure to join necessary and indispensable parties under Fed. R. Civ. P. 19, under the doctrine of *forum non conveniens*, and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

***No Pleading of Claims for Three of the Plaintiffs***.  As an initial matter, Plaintiffs have failed to plead any facts showing that the three non-Russian Plaintiffs have any claims—the only party ostensibly harmed by the conduct of the Russian employees alleged in the Complaint is the Russian Plaintiff.  The Russian Plaintiff's claims fail for numerous reasons, but the other Plaintiffs have not even attempted to plead facts showing they have any claims at all.  *See Shell Petroleum, N.V. v. Graves*, 570 F. Supp. 58, 62 (N.D. Cal.), *aff'd*, 709 F.2d 593 (9th Cir. 1983) (corporations do not have "standing to redress an injury" to an affiliate).

***Failure to Join Indispensable Parties***.  Even if the Plaintiffs could allege facts supporting a claim, the case should be dismissed under Rule 19.  The Russian employees are indispensable parties to this case, as "they were active participants in the alleged wrongful conduct"—in fact, they are the *primary* alleged participants.  *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 905 (C.D. Cal. 2011).  Because the employees are Russian citizens who cannot be joined in this suit, the action should be dismissed in its entirety.  *Id.* at 907–09.

***Dismissal Under the Doctrine of Forum Non Conveniens***.  The case should also be dismissed under the doctrine of *forum non conveniens*.  The Complaint alleges that Russian citizens—who at all times have been in Russia—breached Russian-law-governed employment agreements and Russian fiduciary duties defined by Russian law.  Under the doctrine of *forum non conveniens*, the Court should dismiss this Russian

Gibson, Dunn &
Crutcher LLP

employment-law case in favor of adjudication in Russia.  *See New Classic Home Furnishings, Inc. v. Haining Nice Link Home Furnishings Co.*, 2012 WL 13015017, at *3 (C.D. Cal. June 4, 2012) (dismissing for *forum non conveniens* when "the majority of events underlying this dispute occurred in China" and "this Court has little familiarity with Chinese law, which is likely to control the contracts at issue").

  **Failure to State a DTSA Claim**.  Even if this case proceeds here, all Plaintiffs have failed to state a claim.  The Defense of Trade Secrets Act ("DTSA") claim fails because Plaintiffs have not pleaded any facts showing that Defendants—Korn Ferry and Marat Fookson—acquired any trade secrets.  Plaintiffs' only factual allegations regarding their DTSA claim are that certain of Plaintiffs' *Russian employees* sent emails *to themselves*, while the employees were still employed by the Russian Plaintiff.  Plaintiffs baldly allege on "information and belief" that Defendants "directed" the employees to send the emails, but these conclusory assertions are insufficient to survive a motion to dismiss.  *See Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 927 (9th Cir. 2013) ("Although Hill is alleged to have 'directed' the other defendants to take these actions, no factual assertions support this allegation, and the conclusory allegations are insufficient on their own to defeat a motion to dismiss.").

  Further, Plaintiffs have failed to plead that the Russian employees' emails to themselves were improper.  Plaintiffs have not pleaded that the purportedly emailed information was protected as a trade secret under Russian law—meaning that the employees had no duty to keep the information secret.  *See Calendar Rsch. LLC v. StubHub, Inc.*, 2018 WL 4846797, at *10 (C.D. Cal. Aug. 7, 2018).  The DTSA claims fail for the additional reason that Plaintiffs have not specifically identified their purported trade secrets—or which Plaintiff owns what "secret"—but instead offer "[a] laundry list of items [that] does not meaningfully define the trade secrets at issue." *Masimo Corp. v. Apple Inc.*, 2020 WL 4037213, at *4 (C.D. Cal. June 25, 2020).

  **Failure to State Common-Law Claims**.  Under California's choice-of-law test,

Russian law applies to Plaintiffs' common-law claims. And, under Russian law, all these interference and aiding-and-abetting claims fail—because Russia does not recognize such claims. *Abogados v. AT&T, Inc.*, 223 F.3d 932, 933 (9th Cir. 2000) (affirming dismissal of interference claims, because Mexican law did not recognize them). Even under California law, Plaintiffs have failed to allege facts supporting their claims.

***Failure to State a UCL Claim***. Plaintiffs' claims under California's Unfair Competition Law (the "UCL") fail because the statute does not apply extraterritorially to the Russian Employees' purported conduct. *Norwest Mortgage, Inc. v. Superior Court*, 85 Cal. Rptr. 2d 18, 23 (Cal. Ct. App. 1999). Plaintiffs' "conclusory assertion" that the Russian employees' conduct was somehow "directed from . . . [Defendants'] offices in California" is not enough to justify imposing the UCL. *Gustafson v. BAC Home Loans Servicing, LP*, 2012 WL 4761733, at *5 (C.D. Cal. Apr. 12, 2012).

Even if California's UCL could apply to this Russian case, Plaintiffs have not alleged any facts to support their claims under the UCL's "unlawful" and "unfair" prongs. Under the "unlawful" prong, Plaintiffs have not pleaded facts showing Defendants violated some other statute or law. *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 841 (N.D. Cal. 2020). Under the "unfair" prong, Plaintiffs have not even *attempted* to show Defendants violated the antitrust laws—indeed, *Plaintiffs* have violated the antitrust laws by bringing this baseless lawsuit to chill competition. *See Catch Curve, Inc. v. Venali, Inc.*, 519 F. Supp. 2d 1028, 1037 (C.D. Cal. 2007).

This motion is based on this Notice of Motion; the following Memorandum of Law; the accompanying Declarations of Margarita Y. Divina, Evgeny Reyzman, and Edward Bekeschenko; the files in these actions; argument of counsel; and such other matters as the Court may consider.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place via telephone on April 15, 2021. During that conference, the parties were unable to resolve the issues presented in this Motion.

Gibson, Dunn &
Crutcher LLP

4

1  Dated:  April 29, 2021

2

3                                          DOUGLAS FUCHS
                                           ILISSA SAMPLIN
4                                          DANIEL NOWICKI
                                           GIBSON, DUNN & CRUTCHER LLP
5

6                                          By: /s/        Douglas Fuchs
7                                                     Douglas Fuchs

8                                          Attorneys for Defendants KORN FERRY and
                                           MARAT FOOKSON
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

I. INTRODUCTION .................................................................................................. 1

II. FACTUAL BACKGROUND ............................................................................... 3

III. ARGUMENT ...................................................................................................... 6

    A.    The Dutch, Irish, and U.S. Plaintiffs Have No Claims ............................. 6

    B.    The Complaint Should be Dismissed Under Rule 19 ................................ 7

        1.    Rule 19 Standard ........................................................................... 8

        2.    The Russian Employees Are Necessary Parties ........................... 8

            a.    The Employees Were Participants in the Alleged Conduct .............................................................................. 8

            b.    Complete Relief is Impossible Without the Employees ....... 9

        3.    The Employees Cannot be Joined ................................................ 10

        4.    The Employees are Indispensable ............................................... 10

    C.    The Complaint Should be Dismissed Under *Forum Non Conveniens* ...................................................................................... 12

        1.    *Forum non Conveniens* Standard ............................................. 12

        2.    Plaintiffs' Forum Choice is Entitled to Little Deference .......... 12

        3.    Russia is an Adequate Alternative Forum for this Russian Dispute ......................................................................... 13

        4.    This Private and Public Interest Factors Strongly Favor Dismissal ....................................................................... 15

            a.    The Private Interest Factors Point Decisively Towards Russia ................................................................... 15

            b.    The Public Interest Factors Strongly Favor Dismissal ........ 18

    D.    Plaintiffs Fail to State a DTSA Claim .................................................... 19

        1.    Plaintiffs Have Not Alleged Any Specific Facts Tying Defendants to the Employees' Personal Emails ......................... 20

        2.    Plaintiffs Have Not Alleged Any Facts Showing That Allegedly Misappropriated Information Was Acquired By Improper Means ......................................................................... 21

        3.    Plaintiffs Failed to Describe their "Trade Secrets" with Particularity ................................................................................ 23

**TABLE OF CONTENTS**
(continued)

Page

E.   Plaintiffs' Common-Law Claims Fail Under Russian and California Law ....................................................................................... 24

    1.   Russian Law Applies Under California's Choice-of-Law Test, and All of Plaintiffs' Common Law Claims Fail Under Russian Law ............................................................................. 24

    2.   All of Plaintiffs' Common-Law Claims Fail Under California Law ......................................................................... 26

        a.   The Interference with Contract Claim Fails ........................ 27

        b.   The Interference with Economic Advantage Claims Fail ...................................................................... 28

        c.   The Aiding-and-Abetting Breach of Fiduciary Duty Claim Fails ........................................................... 28

F.   Plaintiffs' UCL Claim Fails ................................................... 29

    1.   The UCL Does Not Apply Extraterritorially to this Russian Case ................................................................................. 29

    2.   The UCL Claim Fails on the Merits ............................... 30

IV.   CONCLUSION ................................................................................. 30

1

## TABLE OF AUTHORITIES

2

Page(s)

3

4

**CASES**

5

*Abogados v. AT&T, Inc.*,
    223 F.3d 932 (9th Cir. 2000) .........................................................24, 25, 26

6

7

*Acrisure of Cal., LLC v. SoCal Commercial Ins. Servs.*,
    2019 WL 4137618 (C.D. Cal. Mar. 27, 2019) ........................................23

8

9

*In re Air Crash Over Taiwan Straits on May 25, 2002*,
    331 F. Supp. 2d 1176 (C.D. Cal. 2004) .................................................3

10

11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................18

12

13

*Ayco Farms, Inc. v. Ochoa*,
    862 F.3d 945 (9th Cir. 2017) ..............................................12, 13, 15, 16

14

15

*Base Metal Trading SA v. Russian Aluminum*,
    253 F. Supp. 2d 681 (S.D.N.Y. 2003) ....................................................15

16

17

*Bladeroom Grp. Ltd. v. Facebook, Inc.*,
    2015 WL 8028294 (N.D. Cal. Dec. 7, 2015) ..........................................23

18

*Blantz v. Cal. Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*,
    727 F.3d 917 (9th Cir. 2013) .............................................3, 18, 20, 21, 28

19

20

*Calendar Rsch. LLC v. StubHub, Inc.*,
    2018 WL 4846797 (C.D. Cal. Aug. 7, 2018) ..........................................22

21

22

*Catch Curve, Inc. v. Venali, Inc.*,
    519 F. Supp. 2d 1028 (C.D. Cal. 2007) ..................................................30

23

24

*In re Cathode Ray Tube (Crt) Antitrust Litig.*,
    2015 WL 12966202 (N.D. Cal. Jan. 2, 2015)..........................................15

25

26

*Crown Imports, LLC v. Superior Ct.*,
    168 Cal. Rptr. 3d 228 (Cal. Ct. App. 2014)............................................28

27

28

*Davis v. HSBC Bank Nevada, N.A.*,
    691 F.3d 1152 (9th Cir. 2012) ...............................................................30

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*De Melo v. Lederle Labs.*,
    801 F.2d 1058 (8th Cir. 1986) ................................................................ 17

*DropzoneMS, LLC v. Cockayne*,
    2019 WL 7630788 (D. Or. Sept. 12, 2019) ........................................... 22

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ................................................................. 21

*Empresa Lineas Maritimas Argentinas v. Schichau–Unterweser, A.G.*,
    955 F.2d 368 (5th Cir. 1992) ................................................................. 16

*Ethypharm S.A. France v. Abbott*,
    271 F.R.D. 82 (D. Del. 2010) ................................................................ 16

*In re Google Assistant Priv. Litig.*,
    457 F. Supp. 3d 797 (N.D. Cal. 2020) .................................................. 30

*Gulf Oil v. Gilbert*,
    330 U.S. 501 (1947) ............................................................................... 12

*Gustafson v. BAC Home Loans Servicing, LP*,
    2012 WL 4761733 (C.D. Cal. Apr. 12, 2012) ................................. 29, 30

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018) ................................................................. 30

*Ixchel Pharma, LLC v. Biogen, Inc.*,
    470 P.3d 571 (Cal. 2020) ....................................................................... 27

*Lockman Found. v. Evangelical All. Mission*,
    930 F.2d 764 (9th Cir. 1991) ........................................................... 14, 17

*Loya v. Starwood Hotels & Resorts Worldwide, Inc.*,
    583 F.3d 656 (9th Cir. 2009) ................................................................. 15

*Lueck v. Sundstrand Corp.*,
    236 F.3d 1137 (9th Cir. 2001) ....................................... 12, 13, 14, 15, 17

Gibson, Dunn &
Crutcher LLP

1
2

**TABLE OF AUTHORITIES**
(continued)

3

Page(s)

4
5

*Masimo Corp. v. Apple Inc.*,
  2020 WL 4037213 (C.D. Cal. June 25, 2020)..........................................................23

6
7

*Masimo Corp. v. Apple Inc.*,
  2020 WL 6653652 (C.D. Cal. Oct. 13, 2020) .........................................................24

8

*McGhee v. Arabian Am. Oil Co.*,
  871 F.2d 1412 (9th Cir. 1989) ................................................................................26

9
10

*Mercier v. Sheraton Int'l, Inc.*,
  981 F.2d 1345 (1st Cir. 1992)..................................................................................16

11
12

*Nasrawi v. Buck Consultants LLC*,
  179 Cal. Rptr. 3d 813 (Cal. App. 2014) ..................................................................29

13
14

*New Classic Home Furnishings, Inc. v. Haining Nice Link Home Furnishings Co.*,
  2012 WL 13015017 (C.D. Cal. June 4, 2012)........................................16, 17, 18, 19

15
16

*Norwest Mortgage, Inc. v. Superior Court*,
  85 Cal. Rptr. 2d 18 (Cal. Ct. App. 1999)................................................................29

17
18

*Pae Gov't Servs. v. MPRI, Inc.*,
  2008 WL 11337999 (C.D. Cal. July 11, 2008) .......................................................24

19
20

*Pain v. United Techs. Corp.*,
  637 F.2d 775 (D.C. Cir. 1980)................................................................................17

21

*Prescott v. LivaNova PLC*,
  2017 WL 9486194 (S.D. Iowa Mar. 24, 2017) .......................................................16

22
23

*Reeves v. Hanlon*,
  95 P.3d 513 (Cal. 2004)..........................................................................................27

24
25

*RIGroup LLC v. Trefonisco Mgmt. Ltd.*,
  949 F. Supp. 2d 546 (S.D.N.Y. 2013) ...............................................................13, 19

26
27

*Shell Petroleum, N.V. v. Graves*,
  570 F. Supp. 58 (N.D. Cal.)......................................................................................7

28

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Sullivan v. Oracle Corp.*,
    254 P.3d 237 (Cal. 2011) ........................................................................29

*In re Toyota Motor Corp.*,
    785 F. Supp. 2d 883 (C.D. Cal. 2011) ..................................3, 8, 9, 10, 11

*Veronica Foods Co. v. Ecklin*,
    2017 WL 2806706 (N.D. Cal. June 29, 2017)....................................21, 23

*Vivendi SA v. T-Mobile USA Inc.*,
    586 F.3d 689 (9th Cir. 2009) ............................................................13, 18

*Vorbiev v. McDonnell Douglas Helicopters, Inc.*,
    2009 WL 1765675 (N.D. Cal. June 18, 2009)..........................................13

**STATUTES**

18 U.S.C. § 1839 (5)(A) ...............................................................................21

18 U.S.C. § 1839 (6)(A) ..........................................................................21, 22

18 U.S.C. § 1839 (6)(B)................................................................................23

**RULES**

Fed. R. Civ. P. 19(a)(1)(A) .............................................................................9

Fed. R. Civ. P. 19(b) ................................................................................8, 10

Gibson, Dunn &
Crutcher LLP

vi

# I. INTRODUCTION

Plaintiffs—the Russian, Irish, Dutch, and U.S. branches of the executive search firm Spencer Stuart—allege that Defendants Korn Ferry and one of its U.S. executives, Marat Fookson, offered Spencer Stuart Russia's employees an opportunity to leave Spencer Stuart Russia and join Korn Ferry's Russian subsidiary at a higher salary. And the employees, attracted by the compensation terms, Korn Ferry's broad, multifaceted platform, and Korn Ferry's economic strength, joined Korn Ferry Russia.

None of this, of course, is the basis for a tort claim. But in a desperate attempt to intimidate their current employees and deter their competitors from recruiting talent, Plaintiffs brought this baseless lawsuit against Korn Ferry and Fookson. Yet Plaintiffs cannot allege any facts connecting Korn Ferry or Fookson to any wrongdoing—because there are none. Instead, Plaintiffs allege that their former Russian employees somehow breached their Russian employment agreements and Russian law duties, sent unspecified "trade secrets" to their personal email accounts in Russia, and redirected Russian clients from Plaintiffs. But rather than sue their former employees in Russia, Plaintiffs have sued Korn Ferry and Fookson in California, offering nothing more than conclusory assertions that Korn Ferry and Fookson *somehow*, *someway*, had *something* to do with the alleged conduct of Plaintiffs' own employees *in Russia*.

Plaintiffs' effort to turn a Russian employment dispute into a California tort case fails on numerous grounds. As an initial matter, while Plaintiffs have brought claims on behalf of Russian, Irish, Dutch, and American entities, the *only* Plaintiff with any apparent injury is the Russian Plaintiff that actually employed the Russian employees—the other tacked-on Plaintiffs have no apparent connection to the case and should be dismissed for that reason alone. Even setting that problem aside, the Russian employees are obviously indispensable to this case—which is *entirely* based on their actions—yet Plaintiffs cannot join them here. If Plaintiffs really believe they have a claim, they can bring an employment action in Russia—but, under Rule 19, they cannot proceed *here* without the employees. Even if Rule 19 did not mandate dismissal—and it does—

Plaintiffs' claims should be dismissed under the doctrine of *forum non conveniens*. California is not the proper forum for a case brought by a Russian corporation and its affiliates complaining about the conduct of Russian citizens, who allegedly breached Russian contracts and Russian fiduciary duties in Russia. The employees are in Russia, the clients they supposedly redirected are in Russia, the evidence is in Russia, and the law governing this case is Russian. This Russian employment dispute should be resolved in Russia.

Even if this forum were proper, Plaintiffs' claims fail on the merits. Their claim under the Defense of Trade Secrets Act ("DTSA") fails because the allegation that *two employees* sent emails to *themselves*—while still employed by Plaintiffs—does not state a claim against *Korn Ferry* or *Fookson*. Even if Plaintiffs could plead facts connecting Defendants to the employees' emails, Plaintiffs have not pleaded that the employees did anything improper. Under Russian law, employees can freely use and disclose information *unless* it is protected by a Russian trade secret regime. Plaintiffs do not allege that they complied with the requirements of Russia's trade secret laws, which means that any purported disclosure by the Russian employees was not improper. The DTSA claim also fails because Plaintiffs have not identified what *specific information* is a trade secret (or which of the many Plaintiffs owns any particular "secret"). Plaintiffs cannot baldly assert that *all* their documents are trade secrets, as they have done here.

Plaintiffs' common-law claims are governed by Russian law—and under that law, the claims fail. Under California's choice-of-law test, Russian law governs Plaintiffs' claims that Korn Ferry interfered with the Russian-law contracts and Russian-law duties owed by Russian employees to their Russian employer. And, as explained by the Russian-law expert declarations submitted with this motion, Plaintiffs have not stated any valid claim against Korn Ferry or Fookson under Russian law. Even if California law applies—and it does not—Plaintiffs have still not stated a claim.

Finally, Plaintiffs' UCL claims fail because California's statute does not apply extraterritorially, and thus does not apply to the actions of Russian employees in Russia.

Even if the UCL *could* apply, Plaintiffs have not pleaded a UCL violation.  Under the statute's "unlawful" prong, Plaintiffs have not adequately pleaded that Korn Ferry or Fookson violated a statute or law.  And under the "unfair" prong, Plaintiffs have not even *attempted* to allege a violation of the antitrust laws.  Indeed, the only parties that have violated the antitrust laws are *Plaintiffs*—who filed this baseless lawsuit to chill competition and intimidate their employees from leaving for other employers.

In short, Plaintiffs filed their suit in the wrong forum, and have not pleaded any factual basis to support their claims.  Their Complaint should be dismissed in its entirety.

## II. FACTUAL BACKGROUND

For purposes of this motion, Defendants accept Plaintiffs' well-pleaded facts as true.[1]  But bald assertions and "[c]onclusory allegations" made "on information and belief" are disregarded.  *Blantz v. Cal. Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 926–27 (9th Cir. 2013).  And on a motion under Rule 19 and *forum non conveniens*, Defendants need not rely on the pleadings and may submit their own evidence.  *See In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 905 (C.D. Cal. 2011) (relying on defendant's declarations for Rule 19 analysis); *In re Air Crash Over Taiwan Straits on May 25, 2002*, 331 F. Supp. 2d 1176, 1184 (C.D. Cal. 2004).

**The Parties**.  Korn Ferry and Spencer Stuart are competitors in the executive search business.  Compl. ¶ 1.  The Spencer Stuart entities that have sued here are: SSI(U.S.) Inc. ("Spencer Stuart US"), a Delaware corporation headquartered in Illinois, *id.* ¶ 11; Spencer Stuart International B.V. ("Spencer Stuart Netherlands"), a Dutch company, *id.* ¶ 12; Limited Liability Company Spencer Stuart International ("Spencer Stuart Russia"), a Russian entity that is 99% owned by Spencer Stuart Netherlands, *id.* ¶ 13;[2] and Spencer Stuart International Ireland, Ltd. ("Spencer Stuart Ireland"), an Irish entity, *id.* ¶ 14.  Defendant Korn Ferry is a Delaware corporation headquartered in Los Angeles that owns several subsidiaries, including a Russian entity known as Korn Ferry

---

[1]  In truth, many of Plaintiffs' allegations are false, as Defendants will prove if this case proceeds past the pleadings.
[2]  The Complaint does not explain what entity owns the remaining 1%.

Gibson, Dunn &
Crutcher LLP

Russia (which the Complaint refers to as "Hay Group"). *Id.* ¶ 15. Marat Fookson is a U.S.-based Korn Ferry executive involved in recruiting. *Id.* ¶ 16.

**Background Allegations**. The Complaint alleges that Spencer Stuart Russia employed consultants and support employees in Moscow who ultimately left Spencer Stuart Russia and joined Korn Ferry Russia. The Complaint does not explain how the other Plaintiffs purportedly were injured by Spencer Stuart Russia's loss of employees.[3]

According to the Complaint, Spencer Stuart Russia has operated a Moscow office since 2014. *Id.* ¶ 28. After the office opened, Spencer Stuart Russia hired three Russian consultants from a competitor to work there: Yaroslav Olegovich Glazunov ("Glazunov"), Margarita Vladimirovna Koshman ("Koshman"), and Anton Vladimirovich Storozhenko ("Storozhenko"). *Id.* ¶¶ 17–19, 28. The three consultants signed employment agreements with Spencer Stuart Russia, which are governed by Russian law. *Id.* Exs. A&B § 17.3, Exs. C&D § 18.1.[4] The contracts are in Russian, and although they include an English translation, the Russian-language version controls. *Id.* Exs. A&B p. 12, Exs. C&D § 21.1. The Complaint makes various assertions about the meaning of the employment agreements under Russian law, including that the agreements impose "duties of loyalty" on the employees. *Id.* ¶¶ 31, 36.[5]

Spencer Stuart Russia also hired Glazunov to act as its "General Director." *Id.* ¶ 29, Exs. C&D. As "General Director," Glazunov allegedly owed special, additional "duties of loyalty" to Spencer Stuart Russia under Russian law. *Id.* ¶ 29. The Complaint also alleges that the consultants were obligated under their Russian contracts and Russian law to protect Spencer Stuart Russia's trade secrets. *Id.* ¶¶ 34, 37, 38.

The Complaint includes numerous allegations about the three consultants, who the Complaint describes as "**RELEVANT NON-PARTIES**." *Id.* p. 6. The consultants

---

[3] The Complaint defines all Plaintiffs "collectively" as "Spencer Stuart," Compl. p. 2, and then makes allegations about "Spencer Stuart" without identifying the Spencer Stuart entity to which the Complaint is referring. As far as Defendants can ascertain, all allegations about "Spencer Stuart" in fact refer *only* to Spencer Stuart Russia.

[4] Unless otherwise stated, citations to "Exs." are to Exhibits to the Complaint.

[5] As explained herein, this is wrong as a matter of Russian law, which prohibits the imposition of a "duty of loyalty" on regular employees. *See infra* p. 19.

Gibson, Dunn & Crutcher LLP

are alleged to be responsible for all the purported injuries Spencer Stuart Russia incurred.

**Glazunov**.   The Complaint alleges that sometime in 2020, Fookson offered Glazunov an opportunity to work for Korn Ferry Russia at a salary "far in excess" of his compensation from Spencer Stuart Russia.  *Id.* ¶ 45.   And on September 3, 2020, Glazunov received a term sheet, offering him this significant pay raise.  *Id.* ¶¶ 47–48. The term sheet specified that Glazunov must "represent and warrant" that he had not "and will not breach or violate any contract or legal obligation owed to any third party," including his "current employer."   Ex. E at 2.   Term sheets for Storozhenko and Koshman, with the same representations and warranties, were also delivered to Glazunov for him to pass on to the two other consultants.  Compl. ¶¶ 50–52.  By October 2020, Korn Ferry provided Glazunov with draft employment agreements, pursuant to which Glazunov would be employed by Korn Ferry Russia.  *Id.* ¶¶ 55–59; Ex. K.

On November 26, 2020, while still employed by Spencer Stuart Russia, Glazunov emailed himself Spencer Stuart Russia's 2021 Fiscal Year budget, as well as a draft email describing Spencer Stuart Russia's bonus policies and listing Spencer Stuart Russia employee salaries.  Compl. ¶¶ 62–64; Ex. M.  On November 27, Glazunov sent himself another email regarding salaries of Spencer Stuart Russia employees, as well as a "SSI closing success fee letter."  Compl. ¶ 65.  On December 18, Glazunov allegedly sent himself "'model' position specification documents."  *Id.* ¶ 66.

The Complaint also alleges that Glazunov "divert[ed] [a] business opportunit[y] meant for Spencer Stuart" Russia.  *Id.* ¶ 83.  Allegedly, on December 15, "Spencer Stuart Client A" contacted Spencer Stuart Russia about a project, and on December 16, Glazunov told Client A to contact him on WhatsApp.  *Id.* ¶¶ 85–86.  On January 21, 2021, Plaintiffs allegedly learned that Client A is now working with Korn Ferry.  *Id.* ¶ 88.  Glazunov did not leave Spencer Stuart Russia until "February 2021."  *Id.* ¶ 17.

**Koshman**.  The Complaint alleges that sometime in "late October 2020," while still employed by Spencer Stuart Russia, Koshman sent emails "to her personal email address" allegedly "containing Confidential Information and/or trade secrets."  *Id.* ¶ 67.

The Complaint does not identify all the alleged "Confidential Information and/or trade secrets" (or explain what constitutes "trade secrets" and what does not), but does say that the emails included, "without limitation," a document described as "a leadership profile report," "a complete CEO practice development timeline," "interview notes," "reporting line information," and other unspecified "trade secrets related to Spencer Stuart's CEO Succession" business. *Id.* The Complaint also alleges Koshman sent herself a "process map" and three "PowerPoint" presentations. *Id.* On December 21, Koshman allegedly "attempted," unsuccessfully, to send "contact details" to her personal email address. *Id.* ¶ 70. Koshman's Executive Assistant also allegedly sent to her own email address unspecified "internal materials" and "model answers to candidates." *Id.* ¶ 80. Koshman left Spencer Stuart Russia in "January 2021." *Id.* ¶ 18.

**Storozhenko**. Storozhenko delivered notices of resignation for himself, Glazunov, and Koshman, on December 20, 2020. *Id.* ¶ 73. On December 22, while still employed by Spencer Stuart Russia, his Executive Assistant allegedly sent herself unspecified "trade secrets." *Id.* ¶ 78. The Complaint also alleges that Storozhenko discussed an "opportunity" with "Client B," and "met with" "Client C." *Id.* ¶¶ 89-90. The Complaint does not explain why these conversations were wrongful, although it does allege that Client C "cancelled two open projects with Spencer Stuart." *Id.* ¶ 90. Storozhenko also allegedly left Spencer Stuart Russia in "January 2021." *Id.* ¶ 19.

### III. ARGUMENT

### A.   The Dutch, Irish, and U.S. Plaintiffs Have No Claims

Plaintiffs allege that Spencer Stuart Russia's former employees (the "Employees") breached their employment contracts and stole their employer's trade secrets. As explained below, Spencer Stuart Russia's claims fail for numerous reasons.

But as an initial matter, the Complaint does not explain why any *other* Plaintiff—aside from Spencer Stuart Russia—has a claim. Plaintiffs try to evade their pleading obligations by defining all Plaintiffs "collectively" as "Spencer Stuart," and deliberately refuse to identify *which* Plaintiff did what (or was harmed in what way). Compl. at 2.

But as the Exhibits to the Complaint reveal, the only Plaintiff to which the Employees owed any duty is Spencer Stuart Russia—the entity that employed the Employees. Ex. A (contract between Employee and Spencer Stuart Russia); Ex. B (same); Ex. C (same); Ex. D (same). Plaintiffs do not allege facts suggesting the Employees breached any duty to any other Plaintiff. And the other Plaintiffs have no apparent connection to this case, with the arguable exception of Spencer Stuart Netherlands, based on the fact that it is a 99% shareholder of Spencer Stuart Russia. But this tenuous connection is not enough to bring suit: "It is clear in this circuit, as it is in others, that the shareholder of a corporation—even a sole shareholder—does not, in general, have standing to redress an injury to the corporation." *Shell Petroleum, N.V. v. Graves*, 570 F. Supp. 58, 62 (N.D. Cal.), *aff'd*, 709 F.2d 593 (9th Cir. 1983).

Therefore, all Plaintiffs *aside* from Spencer Stuart Russia should be dismissed.[6]

## B.     The Complaint Should be Dismissed Under Rule 19

The Complaint is replete with allegations about Spencer Stuart Russia's former Employees—who the Complaint describes as "**RELEVANT NON-PARTIES**"—and alleges that they are responsible for *every act* of misappropriation and breach of duty. Yet even though *all* of Plaintiffs' causes of action are predicated on the claim that the Employees engaged in wrongdoing, they are not parties to this case. And they could not be, given that they are Russian nationals with no ties to California. If this suit proceeds in their absence, both they and Korn Ferry will be prejudiced—a finding of liability against Korn Ferry would effectively be an adjudication of the Employees' guilt *in absentia*, and Korn Ferry could find itself subject to an obligation to destroy all purported "trade secrets" in the possession of its Russian subsidiaries' employees but unable to enforce that obligation against those employees. Under Rule 19, Spencer Stuart Russia's former Employees are indispensable, and this case must be dismissed.

---

[6] To be clear, all of the following arguments for dismissal of the Complaint apply even if the Plaintiffs are treated as a collective mass.

Gibson, Dunn &
Crutcher LLP

1

### 1. Rule 19 Standard

Under Rule 19, a party is necessary "if (a) the Court cannot afford complete relief among the existing parties without that person, or (b) that person has an interest in the litigation, and proceeding without that person would impair their ability to protect the interest, or cause an existing party to incur double or inconsistent obligations because of the interest." *Toyota*, 785 F. Supp. 2d at 904. "If an entity's presence is critical to the disposition of important issues in the case, and/or its evidence will either support the complaint or bolster the defense, it is a necessary party" under this standard. *Id.*

If a necessary party cannot be joined, "the Court must determine whether, 'in equity and good conscience, the action . . . should be dismissed.'" *Id.* (quoting Fed. R. Civ. P. 19(b)). "To make this determination, the Court should consider: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed[.]" *Id.*

### 2. The Russian Employees Are Necessary Parties

#### a. The Employees Were Participants in the Alleged Conduct

As this Court has explained, "[w]hether . . . foreign entities are necessary depends on whether they were active participants in the alleged wrongful conduct, or whether the conduct complained of was solely that of the" named defendants. *Id.* at 905.

Here, the foreign Employees were not only "active participants in the alleged wrongful conduct"—they were the *primary* alleged participants. Plaintiffs allege that the Employees conspired with one another to leave Spencer Stuart Russia, "divert[ed]" clients, and misappropriated trade secrets by sending documents to their private email addresses. Compl. ¶¶ 60, 65–67, 83–90. And Plaintiffs' claims against Korn Ferry and Fookson are premised on the assumption that *the Employees* are liable to Plaintiffs for trade secret misappropriation, breach of contract, and breach of fiduciary duty based on

Gibson, Dunn & Crutcher LLP

8

that conduct. *Id.* ¶¶ 99 (basing trade secret claim on alleged theft by "Glazunov, Koshman, and Storozhenko"); *id.* ¶ 108 (basing interference with contract claim on purported breaches by "Glazunov, Koshman, and Storozhenko"); *id.* ¶¶ 117, 125 (basing interference with prospective economic relations claims on conduct of "Glazunov, Koshman, and Storozhenko"); *id.* ¶ 133 (basing aiding-and-abetting claim on "Glazunov, Koshman, and Storozhenko [] breach[ing] their duties of loyalty"); *id.* ¶ 140 (basing UCL claim on allegation that "Glazunov, Storozhenko, Koshman and others [] breach[ed] their employment agreements"). Resolving Plaintiffs' claims *necessarily* would require deciding whether the Employees engaged in misconduct themselves.

The Employees' conduct is the basis for *every claim* in this case. The Employees are thus necessary parties who "have an interest in the litigation because each respective [Employee]'s liability will necessarily be at issue." *Toyota*, 785 F. Supp. 2d at 906. "A judgment entered against the named [] Defendants might have a preclusive effect on the unnamed foreign [Employees] and weaken their bargaining position and/or impair their ability to protect their own interests in any current and future litigation." *Id.* at 907.

### b.     Complete Relief is Impossible Without the Employees

The Employees are also necessary for a *second* reason: the Court "cannot accord complete relief" without them. Fed. R. Civ. P. 19(a)(1)(A). Plaintiffs are asking for a determination that the Employees stole Plaintiffs' "trade secrets" and demanding injunctive relief, including the return and destruction of any "trade secrets." Compl. at pp. 33–34 (demanding injunction against Korn Ferry's "subsidiaries" and "employees").

But Plaintiffs have not alleged (and cannot allege) any facts showing that *Korn Ferry* possesses any trade secrets. All they have alleged is that two Employees, Koshman and an executive assistant, Maria Maximova, sent purported secrets to their *personal email accounts*. *Id.* ¶¶ 67, 69, 78. Yet those Employees—and their personal devices, which allegedly contain Plaintiffs' trade secrets—are beyond this Court's jurisdiction. Any injunction demanding the return of the trade secrets will not afford Plaintiffs "complete relief" because it would not be enforceable against the very people

Gibson, Dunn & Crutcher LLP

who are actually alleged to have taken the "secrets"—the Employees.

Conversely, "[i]f the [Korn Ferry] Defendants prevail, they cannot be afforded complete relief because . . . Plaintiffs unhappy with the result could turn around and sue the absent [Korn Ferry] entities" and Employees in Russia. *Toyota*, 785 F. Supp. 2d at 906. The fact that this dispute cannot be definitively resolved without the Employees is *yet another* reason that the Employees are necessary parties.

### 3.   The Employees Cannot be Joined

The next step in the indispensable party analysis "is for the court to determine whether it is feasible to order that the absentee be joined." *Id.* at 907. Here, the Employees indisputably cannot be joined, because the Court does not have personal jurisdiction over them. They are Russian nationals with no connection to California. *See id.* (finding foreign non-parties not subject to joinder because "[t]here [was] nothing in the record to suggest that the Court has personal jurisdiction over [them]").

### 4.   The Employees are Indispensable

Given that the Employees are necessary parties who cannot be joined, the last step in the indispensable party analysis is for "the court [to] determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). This determination is based on a consideration of several non-exclusive factors, including whether a judgment rendered without the absent party will unavoidably prejudice the absentee or the parties to the suit, whether a judgment rendered without the absent party would be adequate, and whether the plaintiff would have an adequate remedy if the present action is dismissed. *Id.* Here, all relevant considerations demonstrate that the case should be dismissed.

As in *Toyota*, the Employees would be prejudiced by a judgment rendered in their absence, because a finding that Korn Ferry is liable necessarily would imply that the *Employees* are liable as well—i.e., any judgment against Korn Ferry would "speak[] directly and adversely" to the Employees' innocence. 785 F. Supp. 2d at 908.

Defendants' interests would be prejudiced as well, given that they could be forced

to comply with inconsistent obligations. On the one hand, if the Court were to find that the material taken by the Employees constitutes trade secrets, Defendants could be subject to an injunction requiring that the information be destroyed or returned. But, on the other hand, the Employees would not be bound by this determination and could refuse to cease using any materials in their possession (e.g., on their personal devices). Defendants could not both (1) comply with an injunction requiring them to ensure that their subsidiaries' "employees, agents and representatives" destroy all purported SSI trade secrets, while (2) respecting the Employees' rights under Russian law. *See* Reyzman Decl. ¶¶ 2.1.1–2.1.3.[7]

In addition, proceeding only against Defendants in this forum "would not allow the dispute to be settled as a whole." *Toyota*, 785 F. Supp. 2d at 909. If Plaintiffs wish to recover whatever information the Employees purportedly took with them, they "would have to file individual suits in [Russia] in order for relevant courts to exercise personal jurisdiction over [the] unnamed foreign [employees]." *Id.*

Conversely, Plaintiffs would have an adequate remedy if this action was dismissed in favor of litigation in Russia. As explained below, Russia would have jurisdiction over Defendants and the Employees and could hear Plaintiffs' claims. *See id.* ("Plaintiffs will have an adequate remedy if the action is dismissed because . . . the relevant foreign countries would have jurisdiction."); *infra* pp. 13–14.

Ultimately, the analysis is straightforward. Here, as in *Toyota*, the conduct at the heart of the Complaint was performed by foreign nonparties—the Employees. *Toyota*, 785 F. Supp. 2d at 906 (nonparties "were actively involved in the conduct giving rise to the allegations at the heart of the [complaint]"). And here, as in *Toyota*, the case should be adjudicated in the only forum where those nonparties can be joined—in Russia.[8]

---

[7] All citations to "Decl." are to the declarations filed concurrently with this motion.
[8] Plaintiffs cannot fix this problem by amending their Complaint—the Employees will always be indispensable to this case. Similarly, as explained in the next section, Russia is the appropriate forum for this dispute, and an amendment will not change that fact either. Therefore, the Complaint should be dismissed without leave to amend.

**C.   The Complaint Should be Dismissed Under *Forum Non Conveniens***

The Complaint alleges that Russian citizens—who at all relevant times have been in Russia—misappropriated trade secrets from their former Russian employer, redirected business from their former Russian employer to their new Russian employer, and allegedly breached their Russian-law governed employment agreements (executed and performed in Russia) and their fiduciary duties under Russian law.   The *only* connection between this suit and California is Plaintiffs' bald assertion—made only on "information and belief"—that the Russian Employees' conduct was somehow "orchestrated" out of Los Angeles.   Compl. ¶ 82.   That is not a sufficient reason to bring this Russian employment dispute before a California court—particularly when *all* of the alleged employee misconduct occurred in Russia, the relevant evidence is in Russia, Russian law governs the relevant contracts, and the Russian Employees are beyond the Court's subpoena power.   Under the doctrine of *forum non conveniens*, the Court should dismiss this Russian employment-law case in favor of adjudication in Russia.

**1.   *Forum non Conveniens* Standard**

Under the doctrine of *forum non conveniens*, district courts are empowered "to decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties."  *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001).  This decision is committed to the district court's "sound discretion."  *Id.* at 1143.  A *forum non conveniens* motion has three steps:  first, the court evaluates the level of "deference" to accord the plaintiffs' forum choice; second, the court considers "whether an adequate alternative forum exists"; and third, the court weighs the "private and public interest factors" set out in *Gulf Oil v. Gilbert*, 330 U.S. 501 (1947), to determine whether the factors weigh in favor of dismissal.  *Lueck*, 236 F.3d at 1142–43.

**2.   Plaintiffs' Forum Choice is Entitled to Little Deference**

The degree of deference to afford Plaintiffs' decision to sue in this forum is measured on a sliding-scale, with an American plaintiff suing in its home state afforded the greatest deference, and a foreign plaintiff afforded the least deference.  *See Ayco*

1  *Farms, Inc. v. Ochoa*, 862 F.3d 945, 949–50 (9th Cir. 2017).

2      Here, Plaintiffs' forum choice deserves little deference.  *None* of the Plaintiffs are

3  suing in their home forum—three of the four Plaintiffs are foreign corporations with no

4  apparent connection to the United States at all.  *See* Compl. ¶¶ 12–14.  This includes

5  Spencer Stuart Russia—the Plaintiff that actually employed the Employees, and the only

6  Plaintiff with any apparent injury.  And the only American Plaintiff, Spencer Stuart US,

7  is incorporated in Delaware and headquartered in Chicago.  *Id.* ¶ 11.  As the Ninth

8  Circuit has explained, the fact that a plaintiff is *American* does not support a decision to

9  sue outside of its *home state*:  "A U.S. citizen plaintiff is entitled to less deference in his

10  choice of forum if he does not reside in that forum."  *Ayco*, 862 F.3d at 950.

11      Because this suit is brought by a Russian Plaintiff, its two European affiliates, and

12  an Illinois corporation in a forum that is "far from [their] home," and because the alleged

13  misconduct that forms the gravamen of Plaintiffs' Complaint—the Employees' alleged

14  wrongdoing—occurred entirely in Russia, Plaintiffs' forum choice is entitled to "little

15  deference."  *See Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 693 (9th Cir. 2009)

16  (giving "little deference" to forum choice, when plaintiff was "a French company" that

17  was suing "far from its home" and the "action related to European transactions").

18      **3.    Russia is an Adequate Alternative Forum for this Russian Dispute**

19      The next step in the *forum non conveniens* analysis is to consider whether Russia

20  offers an adequate alternative forum for this dispute.  As numerous courts have already

21  held, "Russia is an available and adequate alternative forum."  *Vorbiev v. McDonnell*

22  *Douglas Helicopters, Inc.*, 2009 WL 1765675, at *2 (N.D. Cal. June 18, 2009)

23  (collecting cases); *RIGroup LLC v. Trefonisco Mgmt. Ltd.*, 949 F. Supp. 2d 546, 555

24  (S.D.N.Y. 2013), *aff'd*, 559 F. App'x 58 (2d Cir. 2014) ("[C]ourts in this Circuit have

25  repeatedly rejected arguments that Russia is an inadequate forum.").  This is true here.

26      The first step in the alternative forum analysis is to determine whether the

27  defendants are amenable to suit in the forum.  *Lueck*, 236 F.3d at 1143.  Here, Defendants

28  agree to submit to Russian jurisdiction, and the Court can condition any dismissal on

Gibson, Dunn &
Crutcher LLP

Defendants' acceptance of Russian jurisdiction.  Defendants' Russian-law experts' affidavits explain that Russian courts will exercise jurisdiction over a foreign entity that expressly consents to Russian jurisdiction—as Defendants do here.  Bekeschenko Decl. ¶ 2.1.5.  This more than satisfies the requirement that Defendants be amenable to suit in the alternative forum.  *Lueck*, 236 F.3d at 1143.

Little else is required to establish that an alternative forum is "adequate"—if the defendants are amenable to service in the forum, then the alternative forum "will be deemed adequate unless it offers no practical remedy for the plaintiff's complained of wrong."  *Id.* at 1144.  As the Ninth Circuit has explained, this does *not* mean that Plaintiffs must be likely to *prevail* in the forum, only that there must be a *potential* "remedy" available for the alleged loss.  *Id.* at 1143–44.  Even a jurisdiction that has "legislated tort law out of existence" is an adequate forum for an American tort suit, so long as there is *some* way for the plaintiffs to present their claim to an adjudicator.  *Id.* at 1143; *Lockman Found. v. Evangelical All. Mission*, 930 F.2d 764, 768 (9th Cir. 1991) ("The possibility of an unfavorable change in the law [due to changing the forum] is not to be given conclusive or substantial weight in a forum non conveniens inquiry.").

Here, the Russian Civil Code provides Plaintiffs with a broad right to seek redress for injuries to their business arising from the misappropriation of confidential information, breach of their employees' employment agreements, and loss of customers.  Divina Decl. ¶¶ 2.1.1, 2.1.5; Reyzman Decl. ¶ 2.2.1.4.  Although Plaintiffs' allegations do not satisfy the elements of *any* of those claims under Russian law, the fact that Plaintiffs have failed to plead valid claims does not mean that Russia is an inadequate forum.  *See Lueck*, 236 F.3d at 1143 (explaining that "[t]he district court was not required to ask whether Plaintiffs could bring *this lawsuit*" in the alternative forum, but only whether the forum "offers a remedy for their [alleged] losses" (emphasis added)).  This is all the more true given that Russian law should apply in *this* Court, *infra* pp. 24–26— so regardless of whether the case is heard here or in Russia, Plaintiffs' tort claims will be treated the same.

Similarly, while Plaintiffs could not bring their DTSA and California UCL claims in Russia, Russia does provide a cause of action for both misappropriation of trade secrets and unfair competition. Divina Decl. ¶¶ 2.1.1, 2.1.5. The fact that "there is no exact equivalent of [an American] statute in Russia" does not render Russia an inadequate forum. *Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681, 700 (S.D.N.Y. 2003), *aff'd*, 98 F. App'x 47 (2d Cir. 2004) (holding that lack of equivalent of RICO statute did not render Russia inadequate in RICO case).

Simply put, the fact "that the law, or the remedy afforded, is less favorable in the foreign forum is not determinative"—what matters is whether the forum "offer[s] 'a' remedy." *Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 666 (9th Cir. 2009) (quoting *Lueck*, 236 F.3d at 1143). Russia offers "'a' remedy" for the harms Plaintiffs complain of, and it is an adequate alternative forum for this dispute. *Id.*

### 4.     This Private and Public Interest Factors Strongly Favor Dismissal

The final step in the analysis requires analyzing the various "private" and "public" factors set forth in the Supreme Court's *Gilbert* decision to determine what forum would be most convenient for the parties and which forum has the greatest interest in the case. Here, virtually every factor—private and public—points to a Russian forum.

#### a.     The Private Interest Factors Point Decisively Towards Russia

The private interest factors focus on the availability of witnesses and proof, the cost of litigating in the Plaintiffs' chosen forum, and the ease of enforcing a judgment in either forum. *See Ayco*, 862 F.3d at 950. Here, these factors point towards Russia.

Practically all the witnesses and sources of proof are in Russia—including all the employees who left Spencer Stuart Russia and joined Korn Ferry. The Employees who allegedly redirected Spencer Stuart Russia's business opportunities, convinced other employees to leave, and misappropriated trade secrets, are in Russia. And all of their personal digital devices to which they allegedly sent "secrets" are in Russia as well.

The Russian Employees are employed by Korn Ferry Russia, not Defendant Korn Ferry, and are outside of the Court's subpoena power. Reyzman Decl. ¶ 2.1.3; *In re*

*Cathode Ray Tube (Crt) Antitrust Litig.*, 2015 WL 12966202, at *1 (N.D. Cal. Jan. 2, 2015) ("If [a] witness is located abroad and is not an officer, director or managing agent [of a party to the suit], the procedures of The Hague Convention or other applicable treaty must be used" to compel their appearance); *Ethypharm S.A. France v. Abbott*, 271 F.R.D. 82, 90 (D. Del. 2010); *Prescott v. LivaNova PLC*, 2017 WL 9486194, at *11 (S.D. Iowa Mar. 24, 2017). Their personal devices are also not in Korn Ferry's control.

Therefore, if this case proceeds here, all of the key witnesses allegedly responsible for *every act* of purported wrongdoing will be outside the subpoena power of this Court, *Ayco Farms*, 862 F.3d at 950–51 (affirming *forum non conveniens* dismissal when "many witnesses . . . could probably not be compelled to appear in California court"); *New Classic Home Furnishings, Inc. v. Haining Nice Link Home Furnishings Co.*, 2012 WL 13015017, at *3 (C.D. Cal. June 4, 2012) ("Significantly, it may be impossible for [the defendants] to present some of their defenses if this action were to proceed in this Court because those witnesses are beyond the Court's subpoena power."), as compared to *very* few witnesses located here in the United States. Further, there is no guarantee that these key witnesses—Russian citizens—will cooperate with Korn Ferry and provide testimony in connection with this American lawsuit. As the Russian experts explain, Russian law protects Russian employees from being coerced by their employer (or here, their employer's parent) to cooperate in foreign litigation. Reyzman Decl. ¶ 2.1.

"[T]here is no 'blanket rule' that a defendant affirmatively demonstrate, by affidavit, the unavailability of a foreign witness and the significance of the witness's testimony." *Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1356 (1st Cir. 1992) (quoting *Empresa Lineas Maritimas Argentinas v. Schichau–Unterweser, A.G.*, 955 F.2d 368, 372 (5th Cir. 1992)). But even if there was such a rule, here there can be no dispute that the Employees are unavailable and that their testimony is enormously significant to this case, which is all about *their* conduct.

Although the Employees are the most important witnesses in the case, they are not the only ones who will be outside the Court's subpoena power—so too are the

various Russian clients the consultants allegedly redirected to Korn Ferry.  If this case proceeds in this Court, Korn Ferry will be effectively "box[ed] out" from securing the testimony of these clients to disprove Plaintiffs' contentions that their business was inappropriately purloined.  *De Melo v. Lederle Labs*., 801 F.2d 1058, 1062–63 (8th Cir. 1986) (affirming *forum non conveniens* dismissal when litigation in the United States would "box out [the defendant] from access to concededly important evidence upon which its defense may well rest"); *Pain v. United Techs. Corp.*, 637 F.2d 775, 788 (D.C. Cir. 1980), *abrogated on other grounds as recognized in Nemariam v. Fed. Democratic Republic of Ethiopia*, 315 F.3d 390, 393 (D.C. Cir. 2003) ("[S]o long as trial were to be conducted in the United States, the inability of both parties to obtain the full panoply of relevant Norwegian evidence would greatly hinder fair resolution of the dispute.").

While litigating in America will preclude access to Russian witnesses and proof, litigating in Russia will not result in difficulties in accessing American witnesses.  The *only* American witnesses Plaintiffs identify are employees of Korn Ferry, and Korn Ferry has agreed to submit to the jurisdiction of a Russian court.  "[B]ecause the district court cannot compel production of much of the [Russian] evidence, whereas the parties control, and therefore can bring, all the United States evidence to [Russia], the private interest factors weigh in favor of dismissal." *Lueck*, 236 F.3d at 1147.

In addition, even if the many Russian witnesses could be convinced or cajoled into appearing in the United States—and producing all their data as well—the costs and burdens of litigating here would be significant.  Travel costs between Russia and California will be expensive.  Even if witnesses *could* testify remotely, "it is desirable that the factfinder have the benefit of demeanor testimony of witnesses" testifying in-person.  *Lockman Found.*, 930 F.2d at 770.  Russian client-witnesses will require interpreters, and Russian documents will need to be translated.  *New Classic*, 2012 WL 13015017, at *3 ("[T]ranslators would need to be hired, which would increase costs and present the risk of translation errors throughout the litigation.").

Finally, the question of whether a judgment would be effective and enforceable

points to a Russian forum.  The employees who allegedly misappropriated Plaintiffs' trade secrets are not parties to this suit and would not be bound by a judgment in the case.  If Plaintiffs are as concerned as they contend with ensuring their purported secrets are destroyed or returned, they need to bring their claims in Russia, where the Employees can be joined and would be subject to judgment.

### b.    The Public Interest Factors Strongly Favor Dismissal

The public factors point to a Russian forum as well.  These factors focus on the overriding interest in having local disputes decided by a local forum, and, conversely, on avoiding burdening a jurisdiction's courts with cases that have little to do with them. *See Vivendi*, 586 F.3d at 696.  Here, Russia has a great interest in hearing a case concerning the freedom of Russian citizens to choose where they are employed under Russian law, while California has no interest in Russian employment disputes.

As this Court recognized in a similar case, because *all* of the alleged misconduct in this case occurred in Russia, Russia "has a particularly strong interest in resolving this controversy."  *New Classic*, 2012 WL 13015017, at *3 ("Because the majority of events underlying this dispute occurred in China, it seems that China has a particularly strong interest in resolving this controversy.").  The Employees' alleged misappropriation of trade secrets occurred in Russia.  Their alleged diversion of clients occurred in Russia. Their purported breach of their fiduciary and contractual duties—all governed by Russian law—occurred in Russia.  Plaintiffs attempt to connect this case to California with bald assertions that Korn Ferry employees in Los Angeles encouraged the purported misconduct of the Russian employees, but these conclusory statements are meaningless. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–81 (2009); *Blantz*, 727 F.3d at 926–27.  Even if Plaintiffs pleaded factual allegations supporting their assertions, the key alleged conduct—the alleged acts of misappropriation and breach of duty—occurred in Russia. This is a Russian case.

Further, Russia has a strong interest in ensuring that Russian employees are not unduly restricted in their ability to move from employer to employer, and that its own

courts interpret Russian citizens' duties and rights.  Plaintiffs' Complaint alleges a variety of claims that are inconsistent with Russian law, including an assertion that all Russian employees owe their employers a duty of loyalty—a claim that is directly contradicted by the governing Russian labor law.  Reyzman Decl. ¶ 2.2.2.1.  Similarly, Plaintiffs allege that Russian employees cannot encourage other employees to leave their current employer and join another—again, a claim that is squarely contradicted by Russia's labor code and constitution, which strongly encourage free movement of employees.  *Id.* ¶ 2.2.1.3.  Russia has a strong interest in ensuring that Plaintiffs do not attempt to use American law to impose obligations on Russian citizens that are inconsistent with Russia's statutes and constitution.  *See RIGroup LLC*, 949 F. Supp. 2d at 555 (Russia had strong interest in ensuring "Russian commercial, real estate, and bankruptcy law" was interpreted appropriately).  Similarly, and as explained below, Plaintiffs' tort claims are governed by Russian law.  *See infra* pp. 24–26.  This further counsels in favor of having a Russian court decide Russian law claims regarding the duties and rights of Russian employees under Russian-law-governed contracts.  *New Classic*, 2012 WL 13015017, at *3 ("Perhaps most significantly, this Court has little familiarity with Chinese law, which is likely to control the contracts at issue[.]").

In short, a Russian forum should hear this Russian employment dispute.

## D.   Plaintiffs Fail to State a DTSA Claim

Plaintiffs' DTSA claim is premised on their allegation that the Russian Employees emailed several documents from their Spencer Stuart email accounts to their personal email accounts before leaving Spencer Stuart.  Even assuming Plaintiffs have adequately alleged that these documents are trade secrets—as explained below, they have not— Plaintiffs do not and cannot allege any facts showing that Defendants had any involvement whatsoever in the Employees' emails to their own private email accounts. For that reason alone, the DTSA claims against Korn Ferry and its executive fail.  The DTSA claims fail for the additional independent reasons that Plaintiffs have not alleged that the Employees' emails to themselves were "improper" under Russian law, and

Plaintiffs have not pleaded facts specifying the particular "trade secrets" the Employees allegedly emailed to themselves.

### 1.   Plaintiffs Have Not Alleged Any Specific Facts Tying Defendants to the Employees' Personal Emails

Plaintiffs have not alleged any facts connecting Korn Ferry or Fookson to the emails the Employees allegedly sent to their personal accounts before they joined Korn Ferry Russia.  The only specific facts Plaintiffs plead to support their DTSA claim are allegations that two Employees—Koshman and Maximova—emailed documents to their personal email accounts while they were still working at Spencer Stuart Russia. Compl. ¶ 67 (alleging that Koshman "sent to her personal email address at least 47 emails containing Confidential Information and/or trade secrets"); *id.* ¶ 78 (alleging that Maximova "sent several attachments to her personal email address, including a copy of the trade secrets identified in Paragraph 42").  Plaintiffs have not alleged facts showing that *Korn Ferry* or *Fookson* acquired any of this information or had anything whatsoever to do with Koshman's and Maximova's emails to themselves.  Plaintiffs include only a bald assertion, on "information and belief," that these documents were "transmitted to and at the direction of and for the benefit of Korn Ferry." *Id.* ¶ 71.

Plaintiffs cannot baldly allege on "information and belief" that Defendants must have had *something* to do with Plaintiffs' employees sending emails to themselves— Plaintiffs must plead facts to support their unfounded "belief." *Blantz*, 727 F.3d at 926–27.  Plaintiffs have not pleaded any facts suggesting that Korn Ferry or Fookson ever obtained confidential information, let alone directed any Employee to take any confidential information out of Spencer Stuart Russia in the first place.  In fact, documents Plaintiffs attach to their Complaint contradict that assertion.  Exs. E–G (term sheets sent by Korn Ferry require that consultants "represent and warrant" that they "will not breach or violate any contract or legal obligation" owed to current employer).  Although Plaintiffs clearly have access to Korn Ferry's communications with the Employees—they attached to their Complaint documents Korn Ferry sent the

1  Employees—Plaintiffs have not identified any communication from Korn Ferry or
2  Fookson directing the Employees to send them *any* confidential information.

3  　　　As the Ninth Circuit explained in an analogous case, a plaintiff cannot baldly
4  assert "on information and belief" that a defendant "directed" someone else to do
5  something. *Blantz*, 727 F.3d at 927 ("Although Hill is alleged to have 'directed' the
6  other defendants to take these actions, no factual assertions support this allegation, and
7  the conclusory allegations are insufficient on their own to defeat a motion to dismiss.").
8  And Plaintiffs have not pled any "factual" allegations to support their far-fetched claim
9  that Defendants "orchestrated" the Employees' actions.  Plaintiffs' allegations are more
10 "consistent with" an *innocent* explanation (that Koshman and Maximova emailed
11 generic, personal, or public information, which no employee would view as a "trade
12 secret," to themselves for their own use) than with Plaintiffs' bald speculation that Korn
13 Ferry and Fookson somehow directed Koshman and Maximova to email these
14 documents to themselves *and* then provide them to Korn Ferry Russia. *Veronica Foods*
15 *Co. v. Ecklin*, 2017 WL 2806706, at *14 (N.D. Cal. June 29, 2017) (rejecting trade secret
16 claim as insufficiently pled, because plaintiffs "must allege facts that are not 'merely
17 consistent with' . . . the theory that Defendants used [plaintiffs'] confidential
18 [information], but rather 'tend[ ] to exclude' an innocent explanation" (quoting *Eclectic*
19 *Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014)).

20 　　　Plaintiffs' unadorned assertions that Korn Ferry and Fookson "directed"
21 Koshman and Maximova to email themselves are "insufficient . . . to defeat a motion to
22 dismiss," and for that reason alone, the DTSA claims fail.  *Blantz*, 727 F.3d at 927.

23 　　**2.**　　**Plaintiffs Have Not Alleged Any Facts Showing That Allegedly**
24 　　　　　**Misappropriated Information Was Acquired By Improper Means**

25 　　　To state a claim for misappropriation under the DTSA, Plaintiffs must plead that
26 Korn Ferry and Fookson acquired Plaintiffs' trade secrets and knew that the information
27 was acquired by "improper means."  18 U.S.C. § 1839 (5)(A); *id.* (6)(A) ("improper
28 means" are "theft, bribery, misrepresentation, breach or inducement of a breach of a duty

to maintain secrecy, or espionage through electronic or other means").  As explained, Plaintiffs have not alleged facts showing that Korn Ferry or Fookson acquired *any* of Plaintiffs' information—they allege that Koshman and Maximova sent some information to themselves while still employed at Spencer Stuart Russia, but have not alleged any facts suggesting this information was ever then sent to Korn Ferry or Fookson.  Even if Plaintiffs could allege that Koshman and Maximova sent information to Korn Ferry or Fookson, Plaintiffs have not alleged that this was "improper."

Under Russian law, an employer may only prevent its employees from acquiring and disseminating information if the employer strictly complies with Russia's trade secret requirements—which include creating a specific framework for the protection of trade secrets, such as marking trade secret documents with a specific stamp that specifies the corporate owner of the trade secret.  Divina Decl. ¶¶ 2.1.1.2, 2.1.1.5.  An employer *must* comply with Russia's trade secret laws to protect its information—it cannot impose confidentiality restrictions if it has failed to comply with Russia's trade secret laws.  *Id.* ¶ 2.1.1.5.

Here, Plaintiffs have not alleged that Spencer Stuart Russia complied with Russia's trade secret requirements.  *Id.* ¶¶ 2.3.1, 2.3.2.  Therefore, Plaintiffs have failed to establish that their documents and information were protected from disclosure under Russian law.  Even if Koshman and Maximova acquired information from Plaintiffs while still employed by Spencer Stuart Russia, and, after they quit, passed the information to Korn Ferry Russia, this would not breach any enforceable duties under Russian law—so Korn Ferry Russia's purported acquisition of information could not have occurred via "improper means."  18 U.S.C. § 1839 (6)(A) (absent allegations of direct "theft" or "bribery," plaintiffs must plead that information was acquired via "a breach of a duty to maintain secrecy"); *Calendar Rsch. LLC v. StubHub, Inc*., 2018 WL 4846797, at *10 (C.D. Cal. Aug. 7, 2018) (no misappropriation when information not acquired via breach of enforceable duty); *DropzoneMS, LLC v. Cockayne*, 2019 WL 7630788, at *18 (D. Or. Sept. 12, 2019) ("The term 'improper means' specifically

1    excludes 'lawful means of acquisition.'" (quoting 18 U.S.C. § 1839(6)(B)).

2    ### 3.    Plaintiffs Failed to Describe their "Trade Secrets" with Particularity

3    "To adequately allege the existence of a trade secret, the plaintiff must describe

4    the trade secret with *sufficient particularity* to separate it from matters of general

5    knowledge in the trade or of special knowledge of those persons who are skilled in the

6    trade, and to permit the defendant to ascertain at least the boundaries within which the

7    secret lies." *Masimo Corp. v. Apple Inc.*, 2020 WL 4037213, at *4 (C.D. Cal. June 25,

8    2020) (quoting *Acrisure of Cal., LLC v. SoCal Commercial Ins. Servs.*, 2019 WL

9    4137618, at *3 (C.D. Cal. Mar. 27, 2019)).[9]  "Although the plaintiff need not define

10   every minute detail, [t]he Ninth Circuit has rejected the use of 'catchall' language,

11   holding that such language is insufficiently specific because it does not clearly refer to

12   tangible trade secret material." *Id.*  "A laundry list of items ... does not meaningfully

13   define the trade secrets at issue." *Id.*

14   Plaintiffs allege that Koshman and Maximova sent themselves "trade secrets," but

15   fail to explain what these "trade secrets" are.  Compl. ¶¶ 67, 78.  Plaintiffs purport to

16   describe "trade secrets" in paragraphs 39, 41 and 42 of their Complaint, but do not make

17   clear whether those are the purported trade secrets sent by Koshman and Maximova that

18   Plaintiffs complain of later.  In any event, all Plaintiffs offer in paragraphs 39, 41 and

19   42 are vague descriptions of documents as "detailed data and explanations, and related

20   documentation," and "trade secret compilations." *Id.* ¶¶ 39, 41–42.  This is insufficient.

21   "The allegations identifying the purported trade secret[s] are vague and conclusory, and

22   consist of a generic list of categories of various types of information." *Bladeroom Grp.*

23   *Ltd. v. Facebook, Inc.*, 2015 WL 8028294, at *3 (N.D. Cal. Dec. 7, 2015).

24   Plaintiffs do claim that three "PowerPoint" presentations and a "process map" that

25   Koshman allegedly sent herself are "trade secrets," Compl. ¶ 67, but this does not

26   remedy the overbreadth problem.  "The 'specific trade secrets' do not actually 'narrow'

27

28   ---
     [9] *Masimo* concerned the California Uniform Trade Secrets Act, rather than the DTSA, but the DTSA's and CUTSA's definitions of "trade secrets" are largely identical.  *See Veronica Foods*, 2017 WL 2806706, at *12.

the impermissibly vague and unbounded description of the trade secrets that precedes them." *Masimo Corp. v. Apple Inc.*, 2020 WL 6653652, at \*4 (C.D. Cal. Oct. 13, 2020). Plaintiffs must explain what, exactly, they are alleging is a trade secret—they cannot vaguely imply that *every* Spencer Stuart Russia document is a trade secret and then say that this "includes" a handful of specific documents. *Id.* ("[T]hese paragraphs do[] not serve to remedy the problems with [an overbroad description of alleged trade secrets] if they merely state what is 'at least' included within it.").

If Plaintiffs want to allege that the specific PowerPoints they identify are the *only* "trade secrets" in the case, then they must do so—they cannot continue to make an overbroad assertion that practically *all* documents Spencer Stuart Russia has ever generated are trade secrets. "Sufficiently alleging one trade secret does not provide notice as to the 'boundaries' of the case when the overall allegations of Plaintiffs' trade secrets are impermissibly broad." *Masimo*, 2020 WL 6653652, at \*4.

Plaintiffs' failure to adequately provide notice as to the "boundaries" of their claimed trade secrets provides a third, independent basis for dismissal of the claim. *Id.*

**E.    Plaintiffs' Common-Law Claims Fail Under Russian and California Law**

This case arises from the Russian Employees' alleged breach of their Russian-law employment contracts and their Russian fiduciary duties.  Russia has a far greater interest than any other jurisdiction in applying its law to the substantive common-law claims alleged by Plaintiffs.  Russian law applies to Plaintiffs' common-law claims, and under Russian law, each of Plaintiffs' common-law claims fails.  Even if California law applied, Plaintiffs have failed to plead facts supporting their claims.

**1.    Russian Law Applies Under California's Choice-of-Law Test, and All of Plaintiffs' Common Law Claims Fail Under Russian Law**

California applies "a three-step 'governmental interest' analysis to choice-of-law questions." *Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000).[10]  First, the

---

[10] Federal courts apply the choice-of-law rules of the state in which they sit. *Pae Gov't Servs. v. MPRI, Inc.*, 2008 WL 11337999, at \*3 (C.D. Cal. July 11, 2008).

Gibson, Dunn & Crutcher LLP

court "examines the substantive law of each jurisdiction to determine whether the laws differ as applied to the relevant transaction." *Id.* Next, if there is a difference in applicable law, the court must determine whether "each of the relevant jurisdictions has an interest in having its law applied." *Id.* Finally, if more than one jurisdiction has a legitimate interest, the court must look to the "comparative impairment" of the interested jurisdictions, and apply the law of the jurisdiction "whose interest would be the more impaired if its law were not applied." *Id.*

Under the governmental interest analysis, Russian law applies to Plaintiffs' common-law claims. First, Russian law clearly differs substantially from California law—unlike California law, Russian law does not recognize any claim for tortious interference or aiding-and-abetting breach of fiduciary duty. Divina Decl. ¶ 2.1.4; *Abogados*, 223 F.3d at 935 (laws of New York and Mexico differed for choice-of-law, as "New York recognizes a claim for tortious interference, whereas Mexico does not").

Under the second prong of the governmental interest analysis, *only* Russia has a genuine "interest" in this case. The relevant alleged conduct occurred in Russia by Russian citizens, and involves Russian law duties and Russian law employment contracts that were performed entirely in Russia. Compl. ¶¶ 29–31 (alleging Glazunov owed duties to Spencer Stuart Russia "under Russian law"); *id.* ¶ 38 (alleging Glazunov, Storozhenko, and Koshman were also under Russian law duties regarding trade secrets); *id.* ¶ 99 (same); *id.* ¶¶ 109–10 (alleging Employees owed duties under the "terms of [their] standard Russian employment agreements and Russian employment laws"); *id.* ¶ 132 (same); Exs. A & B § 17.3 (Koshman and Storozhenko employment agreements are governed by Russian law); Exs. C & D § 18.1 (same for Glazunov's agreements). Russia is the only jurisdiction with an interest in having its law applied to such a case.

Russia has an obvious "interest in regulating conduct that affects contracts made in [Russia]." *Abogados*, 223 F.3d at 935. And while Plaintiffs baldly allege that "some decisions may have been made in the United States" by Korn Ferry executives, those decisions (even if they occurred) "were carried out" in Russia. *Id.* Additionally,

Plaintiffs admit—as they must—that Russian law governs both the contractual and fiduciary duties (to the extent they exist) that the Russian Employees allegedly owed to Plaintiffs. Compl. ¶¶ 109, 132. This case will necessarily involve "determination of the scope of [Russia's] substantive law" regarding employment and fiduciary duties, further strengthening Russia's interest in the case. *Abogados*, 223 F.3d at 935.

Conversely, California does not have an interest in this Russian employment dispute. Although Plaintiffs baldly assert that Korn Ferry executives in California played some role in "directing" or "orchestrating" the Russian Employees' actions, the only alleged conduct that directly harmed Plaintiffs is the employees' alleged misappropriation and breach of duty—which allegedly occurred in Russia. "California . . . will not apply its law to conduct in other jurisdictions resulting in injury in those jurisdictions." *McGhee v. Arabian Am. Oil Co.*, 871 F.2d 1412, 1425 (9th Cir. 1989).

Here, Russian law obviously applies to case alleging interference with "a [Russian] contract, governed by [Russian] law, to be performed completely in [Russia]." *Abogados*, 223 F.3d at 935. Because California has no interest in the application of its laws to this suit, there is a "false conflict" and the law of Russia should be applied. *Id.* at 936.[11] And as explained in the accompanying Russian law declarations, Russian law does not recognize claims for tortious interference or aiding-and-abetting breach of fiduciary duty. Divina Decl. ¶¶ 2.1.2–4. For that reason, Plaintiffs' common-law claims fail. *See Abogados*, 223 F.3d at 933 (affirming dismissal of tortious interference claims because Mexico did not recognize cause of action for tortious interference).

### 2. All of Plaintiffs' Common-Law Claims Fail Under California Law

Even if California law applies to the common-law claims (and it does not), Plaintiffs failed to plead facts showing that Defendants are liable. Plaintiffs have not alleged facts showing that the Employees breached contractual or fiduciary duties to

---

[11] For the same reason, even if California had an interest in the case, it is outweighed by Russia's interest. Russia's interest in ensuring its citizens can freely move among employers would be "impaired" if California tort law regulated the conduct of Russian employees. *Abogados*, 223 F.3d at 934 (if true conflict exists, court should apply law of "state whose interest would be the more impaired if its law were not applied").

Gibson, Dunn & Crutcher LLP

Plaintiffs, much less that Korn Ferry and Fookson caused the Employees to breach those duties. And Plaintiffs have not alleged facts showing that Korn Ferry or Fookson caused the Employees to wrongfully redirect business from Spencer Stuart to Korn Ferry.

### a.    The Interference with Contract Claim Fails

"Tortious interference with contractual relations requires '(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.'" *Ixchel Pharma, LLC v. Biogen, Inc.*, 470 P.3d 571, 575 (Cal. 2020) (quoting *Reeves v. Hanlon*, 95 P.3d 513, 517 (Cal. 2004)). Where, as here, the allegedly disrupted contract is an at-will contract, then there is an additional element: the act of interference must be "independently wrongful," meaning that whatever the defendant did must violate "some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.* at 576, 580.

Here, Plaintiffs have failed to allege any "breach or disruption" of Spencer Stuart Russia's contracts with the Employees. *Id.* at 575. As explained in the Russian-law declarations, the duties that may be imposed by Russian employment contracts are strictly limited by Russian employment law, which broadly favors the rights of employees. Reyzman Decl. ¶ 2.2.1.2. Plaintiffs have failed to allege any breach of any enforceable Russian-law trade secret regime. Divina Decl ¶¶ 2.3.1, 2.3.2. And Plaintiffs' assertion that the Employees could not solicit other employees to join them or redirect business to competitors is wrong as a matter of Russian law. Reyzman Decl. ¶ 2.2.1.3. Plaintiffs have thus failed to allege that Korn Ferry Russia's contracts with the Employees were breached at all, which precludes their interference with contract claim as a matter of law. *Ixchel*, 470 P.3d at 575.

Plaintiffs also failed to allege that Korn Ferry or Fookson engaged in any intentional and "wrongful" act to interfere with the employment contracts. *Id.* at 580. Aside from alleging that Defendants offered the Employees a job—an act that is

indisputably lawful—Plaintiffs have not alleged that Defendants took any action interfering with the Employees' contractual relationship with Plaintiffs. And Plaintiffs' bald assertions that Defendants "directed" the Employees to steal trade secrets or redirect business are insufficient to survive a motion to dismiss. *Blantz*, 727 F.3d at 927.

### b. The Interference with Economic Advantage Claims Fail

Interference with economic advantage requires "independently wrongful" interference with the plaintiff's receipt of a future economic benefit that it otherwise would have received. *Crown Imports, LLC v. Superior Ct.*, 168 Cal. Rptr. 3d 228, 235 (Cal. Ct. App. 2014). Again, Plaintiffs have failed to plead facts supporting their claims.

Plaintiffs ground their economic advantage claims in their allegations that Glazunov and Storozhenko spoke with clients, one of whom later started working with Korn Ferry. Compl. ¶¶ 84–90. But Plaintiffs do not plead any facts suggesting that Defendants asked Glazunov or Storozhenko to speak with these clients while Glazunov or Storozhenko were still at Spencer Stuart Russia. Plaintiffs' boilerplate assertion that Korn Ferry "knowingly caused" Glazunov and Storozhenko to speak with these clients, *id.* ¶ 83, is insufficient to survive a motion to dismiss. *See Blantz*, 727 F.3d at 927. And Plaintiffs do not even *attempt* to plead that Fookson had anything to do with the purported diversion of these clients, mandating dismissal of the claims against him.

Plaintiffs also do not allege that any purported "interference" was "independently wrongful." *Crown Imports*, 168 Cal. Rptr. 3d at 1404. Glazunov and Storozhenko were free under Russian law to suggest that clients take business to Spencer Stuart Russia's competitors. Reyzman Decl. ¶ 2.2.2.2. Even if Plaintiffs *could* plead facts showing that Korn Ferry directed Glazunov and Storozhenko to speak with these clients, that would not establish that Korn Ferry took any "independently wrongful" act that breaches some other law. *Crown Imports*, 168 Cal. Rptr. 3d at 1404.

### c. The Aiding-and-Abetting Breach of Fiduciary Duty Claim Fails

Plaintiffs allege that, under Russian law, "Glazunov, Koshman, and Storozhenko owed duties of loyalty to Spencer Stuart . . . not to solicit employees, misappropriate

trade secrets and other proprietary information, and not to divert business opportunities." Compl. ¶ 131.  But as already explained, Plaintiffs' claims are wrong as a matter of Russian law.  Nothing the Employees are alleged to have done breached any Russian duties.  Defendants cannot be liable for abetting a breach that never occurred.  *See Nasrawi v. Buck Consultants LLC*, 179 Cal. Rptr. 3d 813, 824 (Cal. App. 2014).

## F.    Plaintiffs' UCL Claim Fails

Plaintiffs' UCL claim does not apply extraterritorially to this Russian case, and fails on the merits in any event.

### 1.    The UCL Does Not Apply Extraterritorially to this Russian Case

California's UCL does not apply to conduct that occurs outside of California.  Yet Plaintiffs' attempt to bring a UCL claim based on the Russian Employees' purported conduct—all of which allegedly occurred in Russia.  Plaintiffs cannot apply California's UCL to conduct that occurred 6,000 miles beyond California's borders.

The UCL does not apply to "claims of non-California residents injured by conduct occurring beyond California's borders."  *Norwest Mortgage, Inc. v. Superior Court*, 85 Cal. Rptr. 2d 18, 23 (Cal. Ct. App. 1999).  The key question for UCL extraterritoriality is where the alleged *conduct that caused injury* occurred, *not* where a corporation is headquartered or where a "decision" was made.  *Sullivan v. Oracle Corp.*, 254 P.3d 237, 248 (Cal. 2011) (rejecting extraterritorial application of UCL because the fact "that Oracle's decision to [engage in allegedly unlawful conduct] was made in California does not, standing alone, justify applying the UCL" to claims by non-Californians).  Here, the conduct that allegedly caused injury occurred in Russia—where the Employees purportedly took trade secrets, solicited one another, and diverted business from their Russian employer.  The *only* alleged connection to California is the allegation that "all of the [Employees'] conduct . . . was orchestrated by" Defendants.  Compl. ¶ 81.

In a case that is squarely on-point, another Judge in this District rejected application of the UCL where "[t]he only allegation . . . pertaining to any California-based conduct is the conclusory assertion that 'Defendants' scheme was devised,

implemented and directed from . . . [Defendants'] offices in California." *Gustafson v. BAC Home Loans Servicing, LP*, 2012 WL 4761733, at *5 (C.D. Cal. Apr. 12, 2012). Likewise, Plaintiffs' "conclusory assertion," *id.*, that the Employees' alleged conduct was "orchestrated" in California cannot support applying the UCL to Russian conduct.

### 2.    The UCL Claim Fails on the Merits

Even if California's UCL applies here (and it does not), Plaintiffs have failed to plead facts stating a UCL claim under either of the two prongs of the statute they cite in support of their claim:  the "unlawful" and "unfair" prongs.  Compl. ¶¶ 137–38.

To allege a violation of the "unlawful" prong, Plaintiffs must allege that Defendants violated some other statute or "'borrowed' law." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 841 (N.D. Cal. 2020) (quoting *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168(9th Cir. 2012)).  As explained above, Plaintiffs have not pleaded any facts showing that Korn Ferry or Fookson violated the DTSA or any other statute, and have thus not pleaded a violation of the UCL's "unlawful" prong.  *See Google*, 457 F. Supp. 3d at 841 (UCL claim failed as underlying statutory claims failed).

To allege a violation of the "unfair" prong, Plaintiffs must plead facts showing that Defendants violated "an antitrust law, or violate[d] the policy or spirit of one of those laws because [their conduct is] comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866 (9th Cir. 2018).  Plaintiffs have not pled—or *attempted* to plead—any violation of any antitrust law or policy under the "unfair" prong.  If anyone has violated the antitrust laws, it is *Plaintiffs*—who brought this baseless lawsuit to suppress competition and intimidate their employees from exercising their right to leave for other employers.  *See Catch Curve, Inc. v. Venali, Inc.*, 519 F. Supp. 2d 1028, 1037 (C.D. Cal. 2007) (plaintiffs who file "vexatious litigation" and "[use] the litigation . . . to stifle competition" are violating the Sherman Act).  Plaintiffs' "unfair" UCL claim fails.

### IV. CONCLUSION

The Complaint should be dismissed in its entirety, without leave to amend.

DATED:  April 29, 2021

DOUGLAS FUCHS
ILISSA SAMPLIN
DANIEL NOWICKI
GIBSON, DUNN & CRUTCHER LLP

By: */s/        Douglas Fuchs*
                Douglas Fuchs

Attorneys for Defendants KORN FERRY and MARAT FOOKSON

Gibson, Dunn &
Crutcher LLP

31